UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JENNIFER S. COLE, on behalf of her Minor child R.G., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. 3:25-cv-442-CCB-AZ |
| CITY OF WARSAW, WARSAW POLICE OFFICERS, and KOSCIUSKO COUNTY SHERIFF, | ) ) ) ) ) |
| Defendants. | ) |

**FINDINGS, REPORT, AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE PURSUANT TO
28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on Defendant Kosciusko County Sherriff's Motion to Dismiss [DE 8], filed on June 23, 2025. On June 26, 2025, Defendants City of Warsaw and "Warsaw Police Officers" filed a Notice of Joinder as to their co-Defendant's motion [DE 11]. In addition to responding to the motion to dismiss, Plaintiff filed a Motion to Amend Complaint [DE 14], filed on July 7, 2025. Both motions have been fully briefed. On October 14, 2025, the presiding District Court Judge referred them for a report and recommendation. DE 24.

This Report constitutes the Court's proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court **RECCOMMENDS** that District Court Judge Cristal C. Brisco **GRANT IN PART** Defendants' Motion to Dismiss [DE 8] and **GRANT IN PART** Plaintiff's Motion to

Amend Complaint [DE 14] to allow this case to proceed, albeit with fewer claims and Defendants.

## Background

This lawsuit was brought by Plaintiff Jennifer S. Cole, on behalf of her minor son, R.G. Plaintiff alleged that law enforcement caused traumatic injuries to R.G. when they detonated a flash bang device in a home during the execution of a search warrant. Plaintiff alleged this happened without justification and after someone on the scene told law enforcement that the only person in the home was an 11-year-old boy wearing headphones.

The timeline according to the allegations of the Amended Complaint[1], which the Court assumes to be true at this stage of the proceedings, is as follows. On the afternoon of May 25, 2023, R.G. was alone at home. DE 14-1 (Proposed Am. Compl.) at ¶ 5. At approximately 3:45 p.m., Warsaw Police Department and Kosciusko County Sheriff law enforcement officers arrived to execute a search warrant of the home. *Id.* at ¶ 6. Shortly after law enforcement arrived, and apparently before they entered the home, Dennis Ray Deaton, Jr. arrived at the scene. His relationship to the home or R.G. is unclear, but he knew R.G. was in the home. *Id.* at ¶ 7. Law enforcement ordered Deaton to the ground. *Id.* While that was occurring, Deaton told law enforcement multiple times that the only person in the house was an 11-year-old

---

[1] Defendants have not argued that Plaintiff has not been diligent in filing her Amended Complaint, merely that Plaintiff's amended claims fail for much of the same reasons as in the original motion to dismiss. The Court will thus use Plaintiff's proposed Amended Complaint as the basis for the factual allegations of the case.

alone in the house with headphones. *Id.* at ¶¶ 5-9. Law enforcement nevertheless proceeded with executing the search warrant and deployed "flash bang devices indiscriminately in the home after first being warned that the sole occupant was an 11-year-old-boy." *Id.* at ¶10. There was "a loud 'boom' inside the home." *Id.* at ¶ 11. Soon after, R.G. stumbled out the front door, disoriented and covered in a white powder consistent with a flash bang device's explosion. *Id.* at ¶ 12. R.G. sustained physical and psychological injuries.

Plaintiff alleges that the City of Warsaw and Kosciusko County Sheriff (hereafter "the Municipal Defendants") are liable because of their failure to have constitutionally adequate training procedures for law enforcement officers relating to use of flash bang devices in connection with search warrants and in the presence of third parties who do not pose any safety threat, such as an 11-year-old boy. DE 14-1 at ¶ 3a-d.

On April 29, 2025, R.G.'s mother sued in state court on behalf of R.G. and the matter was removed to federal court on May 19, 2025. *See* DE 1. Defendants then jointly moved to dismiss. In response, Plaintiff sought leave to file an amended complaint to add additional allegations, parties, and claims on behalf of Plaintiff Cole for property damage. And while allowing any plaintiff at least one opportunity to amend their pleadings in federal court is routine, Defendants argue it would be futile here because the proposed amended complaint fails to state a claim upon which relief can be granted. As discussed below, the Court agrees with some of Defendants' arguments as to specific claims and specific unknown parties but finds that Plaintiff

3

R.G. has alleged enough to continue with this lawsuit against the Municipal Defendants. The Court recommends that Plaintiff Cole be dismissed.

## Discussion

To survive a motion to dismiss, a "complaint must contain allegations that collectively 'state a claim to relief that is plausible on its face.'" *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court will "accept all well-pleaded allegations of fact as true and draw all reasonable inferences in the plaintiffs' favor." *Alarm Detection Sys.*, 930 F.3d at 821. But "[l]egal conclusions," such as boilerplate assertions that Defendants committed a tort, "do not get the same benefit," and the Court will disregard those. *Id.* (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). "If the well-pleaded allegations plausibly suggest—as opposed to possibly suggest—that the plaintiffs are entitled to relief, the case enters discovery," otherwise "dismissal is appropriate." *Id.* (citations omitted).

Defendants argue that Plaintiff's failure to sue individual law enforcement officers precludes liability against either municipal entity for state law battery (under a respondeat superior theory) or for a policy, practice, and custom claim under *Monell v. Dep' of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Plaintiff sought to remedy this problem by adding additional "unknown officers" as defendants, i.e., John and Jane Does. Defendants oppose the request for leave to amend and argue that it would be futile to allow Plaintiffs to do so because the claims should still be dismissed.

When a party seeks leave to amend a pleading, the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "[T]his mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Courts maintain broad discretion in this area, but "[a]s a general rule, district courts should liberally grant leave to amend pleadings*." Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 854 (7th Cir. 2017); *see also Duthie v. Matria Healthcare, Inc.*, 254 F.R.D. 90, 94 (N.D. Ill. 2008) ("By its plain terms, the rule reflects a liberal attitude towards the amendment of pleadings—a liberality consistent with and demanded by the preference for deciding cases on the merits."). Leave to amend is "inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Villa v. City of Chicago*, 924 F.2d 629, 632 (7th Cir. 1991). There is no deadline to seek leave to amend in this case because the Court has not held a scheduling conference with the parties pursuant to Fed. R. Civ. Pro. 16(b) and no schedule has been entered. Thus, Defendants sole argument opposing leave to amend focuses on the alleged futility of Plaintiff's amendment, which is akin to arguing that the proposed amendment would not survive a motion to dismiss. *Nowlin v. Pritzker*, 34 F.4th 629, 635 (7th Cir. 2022) ("[W]hen the basis for denial is futility, we apply the legal sufficiency standard of Rule 12(b)(6) to determine whether the proposed amended complaint fails to state a claim.") (quoting *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)).

Before getting into the merits, the Court notes that this is the first attempt at amending the complaint and there is a "presumption in favor of giving plaintiffs at least one opportunity to amend." *Runnion*, 786 F.3d at 518 ("denying a plaintiff that [first] opportunity carries a high risk of being deemed an abuse of discretion"). This presumption in favor of at least one amendment strikes the Court as especially relevant in cases where a plaintiff filed her lawsuit originally in state court and the first amended complaint is the plaintiff's first pleading drafted for federal court. Furthermore, as the Seventh Circuit has put it, "cases of clear futility at the outset of a case are rare" and this case is in the early stages. *Id.* But at the same time, "District courts may refuse to entertain a proposed amendment on futility grounds when the new pleading would not survive a motion to dismiss." *Gandhi v. Sitara Cap. Mgmt., LLC*, 721 F.3d 865, 869 (7th Cir. 2013). Defendants say this is such a rare case and that adding new unknown officers is futile because suing unknown individuals in federal court is "pointless" and that even if individuals were identified, the claims would be barred by statute of limitations.

**A. Whether Plaintiff's Failure to Sue Individual Law Enforcement Officers by Name Prohibits Plaintiff from suing the Municipalities that Employed the Officers.**

The first argument raised by Defendants is that the inclusion of "Warsaw Police Officers" in the original complaint and addition of "Unknown Officers of the Kosciusko County Police Department" in the amended complaint are improper and those anonymous Defendants should be dismissed from the case.

6

The Seventh Circuit has been blunt in how it views complaints against unknown defendants: "it is pointless to include an anonymous defendant in federal court; this type of placeholder does not open the door to relation back under Fed. R. Civ. P. 15, nor can it otherwise help the plaintiff." *Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997) (cleaned up); *Strauss v. City of Chicago*, 760 F.2d 765, 770 n.6 (7th Cir. 1985) (suing anonymous or John or Jane Doe defendants "is viewed with disfavor"). In response, Plaintiffs argue that under Indiana Trial Rule 17(F) (which controls proceedings in Indiana state court), naming an unknown party is permissible and true names may be later substituted once known. DE 13 at 3.

An identical argument was recently raised by the plaintiff in *Warner v. Allen Cnty. Sheriff*, 2025 WL 1370026 (N.D. Ind. May 9, 2025), and Chief Judge Brady rejected this argument on two bases. The Court follows a similar path here. In *Warner*, the court began with the proposition that "'[a] removed action proceeds as if it had been originally brought in federal court' and the federal rules of civil procedure become controlling." 2025 WL 1370026, at *6, n.1 (quoting *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005). Second, "even if the Court were to entertain this argument and find Indiana procedure controlling," Plaintiff fails to allege "what any specific Jane or John Doe Defendant did regarding the alleged incidents." *Id*. "Instead, Plaintiff refers to the acts of various officers without 'stating that any of them is one of the unidentified John or Jane Does, so those officers and their employing entity cannot tell if they are alleged to have violated Plaintiffs' rights.'" *Id*. (quoting *Roseborough v. City of Trotwood*, 2006 WL 2524240, at *2 (S.D. Ohio Aug.

7

30, 2006)) (cleaned up). This fails to put these unknown Defendants on notice as to the claims against them, in violation of Fed. R. Civ. P. 8.

Defendants build upon this to then argue that when the Seventh Circuit has said that "a municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee" it means that a plaintiff must sue a particular individual employee by name when suing the entity that employed them. DE 16 at ¶ 4. (quoting *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010). This argument gets Defendants out over their skis. It misreads *Sallenger* and contradicts other binding precedent from the Seventh Circuit. In *Sallenger*, the Seventh Circuit held the *Monell* claim was doomed was because those plaintiffs had already sued individual officers for constitutional violations, took those claims against the individual officers to trial, and lost. *Sallenger*, 630 F.3d at 504 ("[A]ll three officers were cleared of any constitutional wrongdoing on the excessive-force claim following jury trials; the Estate does not challenge these verdicts on appeal."). Thus, because there was a jury verdict that no constitutional violation occurred, there could be no liability under *Monell*. *Sallenger* said nothing regarding the viability of suing a municipal agency alone without also suing individual officers by name, and the Municipal Defendants do not cite any other case in support of their proposition. More importantly, the Seventh Circuit has squarely rejected the rule the Municipal Defendants advocate for. In *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293 (7th Cir. 2010), a municipality "push[ed] for a rule that requires individual officer liability before a municipality can ever be held liable for damages under *Monell*." 604 F.3d at

8

305. The Seventh Circuit called this argument "unreasonable" and specifically contemplated the situation before the Court. "What if the plaintiff here had only sued the County, or didn't know, because of some breakdown in recording shifts, who the CMTs on duty were?" *Id.* Instead, the Seventh Circuit held that a municipality can be held liable under *Monell,* even when its officers are not, unless such a finding would create an *inconsistent* verdict." *Id.* (emphasis in original). And that explains the holding in *Sallenger*. Having a jury find in favor of individual defendants that they did not commit excessive force is different than a plaintiff not naming individual officers as individual defendants in a complaint for purposes of municipal liability.

The Municipal Defendants' argument incorrectly conflates *Monell* liability with traditional respondeat superior liability for state law tort claims. That is contrary to the very essence of a *Monell* claim. The Supreme Court rejected general respondeat superior principles for Section 1983 claims. "[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Instead, Section 1983 claims require a policy or custom before municipal liability can attach. *Id.* at 694 ("Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). And while commentators have critiqued *Monell* and even some judges on the Seventh Circuit have suggested it could be replaced in favor of traditional respondeat superior principles, that is not the law. *See Shields v.*

9

*Illinois Dep't of Corr.*, 746 F.3d 782, 792 (7th Cir. 2014) *("*Of course, the critiques of *Monell*'s rejection of *respondeat superior* liability for municipalities have not yet persuaded the Supreme Court to reconsider that rule. Given our position in the judicial hierarchy, then, we are bound to follow *Monell* as far as municipal liability is concerned."). Thus, Plaintiffs failure to sue any individual officer by name does not by itself mean Plaintiff has failed to state *Monell* claims against the Municipal Defendants.

In addition to the *Monell* claim, Plaintiffs have also sued the Municipal Defendants for state law battery under a respondeat superior theory. DE 14-1 at ¶ 15. That's a different claim with a different analysis, especially given Indiana's statutory law regarding public employee tort liability. "A person commits the civil tort of battery if '(a) he acts intending to cause a harmful or offensive contact with the person of the other or third person, or an imminent apprehension of such contact, and (b) a harmful contact with the person of the other directly or indirectly results.'" *Lessley v. City of Madison, Ind.*, 654 F. Supp. 2d 877, 914 (S.D. Ind. 2009) (quoting *Singh v. Lyday,* 889 N.E.2d 342, 360 (Ind. App. 2008)). The Indiana Tort Claims Act ("ITCA") governs tort claims against public employees and governmental entities in Indiana. Ind. Code § 34-13-3-5; *Ball v. Jones*, 52 N.E.3d 813, 820 (Ind. Ct. App. 2016) ("The ITCA governs lawsuits against political subdivisions like the City of Indianapolis and against their employees."). "[I]t provides substantial immunity for conduct within the scope of the employees' employment." *Id.* "The purpose of immunity is to ensure that public employees can exercise their independent judgment

necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment." *Celebration Fireworks, Inc. v. Smith,* 727 N.E.2d 450, 452 (Ind. 2000). Thus, "[a] judgment rendered with respect to … a governmental entity bars an action by the claimant against an employee." Ind. Code § 34-13-3-5.

In other words, if the conduct at issue falls within the scope of a governmental employee's scope of employment, the statute bars an action against the individual employee, and only the entity can be sued. But if the governmental entity answers the complaint by stating the employee was acting outside the scope of their employment, then the individual employee is subject to liability. Here, the Municipal Defendants have not asserted the individual law enforcement officers were acting outside the scope of their employment, so the Court is operating under the assumption that the ITCA bars an action against the individual law enforcement officers. And similar to *Monell* claims, Indiana courts applying the ITCA have recognized suing the individual officer or employee is not a necessary condition to pursuing a tort claim under a respondeat superior theory against the employing governmental entity. *See, e.g.*, *Smith v. Indiana Dep't of Corr.*, 888 N.E.2d 804, 808–09 (Ind. Ct. App. 2008) ("That Smith's claims against the individual defendants cannot proceed for lack of a factual basis supporting such claims does not necessarily mean that his claims against the governmental entities also named as defendants cannot proceed."). Therefore, the state law battery claim against the Municipal Defendants should not be dismissed for failure to state a claim.

11

**B.   Whether Plaintiffs' Claims Are Barred by the Statute of Limitations.**

The Municipal Defendants' next argument is that because Plaintiffs have sought to add the unknown police officer Defendants more than two years after the events occurred, the entire case—including the claims against the Municipal Defendants that were alleged when the original complaint was filed less than two years after the incident—is barred by the statute of limitations. This argument is without merit as to Plaintiff R.G. but with merit as to Plaintiff Cole.

The statute of limitations for Section 1983 claims is not spelled out in the federal code. Instead, "[c]ourts look to the personal injury laws of the state in which the injury occurred to determine the length of the statute of limitations." *CBS Outdoor, Inc. v. Vill. of Plainfield, Ill.*, 959 F. Supp. 2d 1054, 1061 (N.D. Ill. 2013) (citing *Wallace v. Kato,* 549 U.S. 384, 387 (2007)). "Indiana's personal injury statute of limitations is two years." *Behav. Inst. of Indiana, LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005) (citing Ind. Code § 34–11–2–4). Therefore Plaintiff's Section 1983 and state law battery claims are subject to the same two-year statute of limitations. The parties agree that Plaintiff R.G.'s claims were timely filed four weeks before they would have expired. But when Plaintiff sought leave to amend less than two months later on July 7, 2025, it was more than two-years since the incident.

Parroting its position that a municipality can only be sued under *Monell* if a Plaintiff alleges a claim against a particular identified individual, the Municipal Defendants argue that adding new unknown defendants past the statute of

limitations renders the *Monell* claims untimely. As explained above, this is an incorrect interpretation of the law. As also discussed, the Court will recommend dismissal against the unknown individual officers because proceeding against a "John Doe" is meaningless in federal court and fails to satisfy Fed. R. Civ. P. 8's notice standard. But there is no question that when Plaintiff filed this lawsuit in April 2025, she sued both Municipal Defendants and did so within the applicable two-year statute of limitations. *See* DE 5 (state court complaint). Thus, Plaintiff's Section 1983 and state law battery against the Municipal Defendants were timely, regardless of Plaintiff's later unsuccessful inclusion of placeholder defendants.

This ruling renders the parties' arguments as to relation back under Fed. R. Civ. P. 15(c) moot. Because there are no proper individual defendants at this time, the Court need not engage in whether the allegations against these non-defendants relate back to the date of the original complaint. It would be premature for the Court to decide now *if* Plaintiff later learns the identify of individual law enforcement officers and adds them as defendants, whether those claims would relate back to the original date of filing within the meaning of Fed. R. Civ. P. 15(c). If or when that occurs, those defendants can raise statute of limitation and failure to relate back arguments, and the Court will address them at that time.

But as to Plaintiff Jennifer Cole, who did not bring any claims of her own in the original lawsuit and only sought to be added as a Plaintiff when the motion for leave to amend was filed on July 7, 2025, more than two years after the incident in question, Defendants are correct. Plaintiff Cole's proposed claims for property

13

damage were not filed within two years of the underlying incident and are thus untimely. The Court will recommend dismissal of Plaintiff Cole's claims.

## C.     Whether Plaintiff R.G. Substantively Alleges a *Monell* Claim.

The Municipal Defendants final argument is that Plaintiff's *Monell* claim is nothing more than "threadbare recitals of the cause of action" and thus fails to state a claim. DE 15 at ¶ 19. They further argue that Plaintiff must allege "more than a single incident" in order to bring a *Monell* claim, citing *Gill v. City of Milwaukee*, 850 F.3d 335 (7th Cir. 2017), and that Plaintiff failed to do so. While Plaintiff's allegations are not particularly detailed, she adequately alleges that R.G.'s injuries are traceable to the Municipal Defendants' lack of training regarding the use of flash bang devices.

"To state a claim under *Monell*, [Plaintiff] must plausibly allege that a municipal action is the 'moving force' behind the violation of his constitutional rights and demonstrates municipal fault." *Thompson v. Cook Cnty.*, 2023 WL 2838449, at *5 (N.D. Ill. Apr. 7, 2023) (citing *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 826 (7th Cir. 2022). A plaintiff may show this generally in four different ways. "A municipal action may take the form of an express policy, widespread practice tantamount to a custom, or a decision by a final policymaker." *Id.* "A plaintiff may take an 'alternative path to *Monell* liability' by alleging that the need for more or different training is 'so obvious that the municipality's failure to act can reflect deliberate indifference and allow an inference of institutional culpability, even in the absence of a similar prior constitutional violation.'" *Hires v. City of Mishawaka*, 2022 WL 16745031, at *4 (N.D. Ind. Nov. 4, 2022) (quoting *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 380 (7th Cir. 2020).

14

"This is known as a failure-to-train theory of liability. *Id.* (citing *Flores v. City of S. Bend*, 997 F.3d 725, 733 (7th Cir. 2021). It is worth remembering that while Plaintiff must allege a plausible claim, "*Monell* claims are not subject to a heightened pleading standard" that requires particularity. *Thompson*, 2023 WL 2838449, at *5 (quoting *White v. City of Chi.*, 829 F.3d 837, 843–44 (7th Cir. 2016). Thus, while pleading multiple incidents is not mandatory in all instances, such as a written policy case, any plaintiff pursuing a failure-to-train theory will still need to eventually "provide enough evidence of custom and practice to permit an inference that the [municipality] has chosen an impermissible way of operating." *Calhoun v. Ramsey*, 408 F.3d 375, 381 (7th Cir. 2005). It remains to be seen whether discovery will support Plaintiff's allegations.

Defendants' argument that a plaintiff must allege multiple instances of conduct in order to plead a *Monell* claim is again at odds with binding Seventh Circuit precedent. Sitting en banc in *Glisson v. Indiana Dep't of Corr.*, the Seventh Circuit recounted that it had long held that "in situations that call for procedures, rules or regulations, the failure to make policy itself may be actionable." 849 F.3d 372, 381 (7th Cir. 2017) (en banc) (quoting *Sims v. Mulcahy*, 902 F.2d 524, 543 (7th Cir. 1990)); *see also Avery v. Cnty. of Burke*, 660 F.2d 111, 114 (4th Cir. 1981); *Murray v. City of Chicago*, 634 F.2d 365, 366–67 (7th Cir. 1980). In *Glisson*, the court made clear that multiple alleged violations are not a necessary condition to successfully pleading a *Monell* claim. *Glisson*, 849 F.3d at 381 ("Notably, neither the Supreme Court in *Harris*, nor the Ninth Circuit, nor the Third Circuit, said that institutional liability

15

was possible only if the record reflected numerous examples of the constitutional violation in question."). Instead, in a "policy not to have a policy" or failure to train case, "[t[he key is whether there is a conscious decision not to take action." *Id.* "That can be proven in a number of ways, including but not limited to repeated actions. A single memo or decision showing that the choice not to act is deliberate could also be enough. The critical question under *Monell* remains this: is the action about which the plaintiff is complaining one of the institution itself, or is it merely one undertaken by a subordinate actor?" *Id.*; *see also Thomas*, 604 F.3d at 393 ("[I]n situations where rules or regulations are required to remedy a potentially dangerous practice, the County's failure to make a policy is also actionable."); *King v. Kramer*, 680 F.3d 1013, 1021 (7th Cir. 2012) (where municipality has "actual or constructive knowledge that its agents will probably violate constitutional rights, it may not adopt a policy of inaction").

The notion that "a policy not to have a policy" relating to use of flash-bang grenades in close proximity to innocent individuals when there is no immediate threat would be actionable under *Monell* is even more reasonable, given the unequivocal nature of the Seventh Circuit's case law in the context of qualified immunity and use of flash bangs. "We have previously indicated that the use of flash bang devices should be limited and is not appropriate in most cases." *Est. of Escobedo v. Bender*, 600 F.3d 770, 784 (7th Cir. 2010). In *Est. of Escobedo*, the court discussed previous instances where the court examined use of flash bangs. For example, in *Molina v. Cooper,* the court stated that "use of flash bang devices during the execution

16

of a 'high risk' search warrant—which was obtained for Molina's home on suspicion of drug activity—was reasonable because Molina had a criminal history that included aggravated assault, was alleged to be the head of a drug distribution organization, was associated with gangs, was home and had access to a stash of weapons." And while their use was found to be reasonable under the facts of that case, "we in no way suggest that the use of flash bang devices is appropriate in every case (or even most cases)." *Molina,* 325 F.3d 963, at n.1, 973. Other cases emphasize that use of flash bang devices is only appropriate when there is some palpable threat of violence, *see United States v. Folks,* 236 F.3d 384, 388 n.2 (7th Cir. 2001), and other cases suggest law enforcement have a duty to ensure there are not innocent third parties near where the device is to be used, *see United States v. Morris,* 349 F.3d 1009, 1012 n. 1 (7th Cir. 2003). While Plaintiff's Amended Complaint does not elaborate on why the search warrant was being served or what dangers might have been present, Plaintiff need not flesh out and the Court need not determine the full contours of when flash bang devices can be used at this early stage. For pleading purposes, it is reasonable assert that indiscriminate use of flash bang grenades against low-risk individuals, such as an 11-year old alone at home, would be presumptively unreasonable.

Furthermore, Plaintiff's Amended Complaint is not "mere boilerplate," as Defendants contend; rather, it identifies a specific type of conduct on the part of law enforcement (use of flash-bangs against innocent third parties while executing a search warrant where this is no indication of danger) and identifies this as result of policy failures, primarily inadequate training on the part of the Municipal

17

Defendants. DE 14-1 at ¶ 3. This is not the type of allegation that courts have found to be "mere boilerplate." It does not "encompass virtually all the activities of a police department and every contact it has with the public." *Thompson*, 2023 WL 2838449, at *5 (quoting *Armour v. Country Club Hills*, 2014 WL 63850, at *7 (N.D. Ill. Jan. 8, 2014)). Plaintiff has told a story that, if true, plausibly alleges unreasonable conduct and excessive force towards R.G., an 11-year-old boy who suffered injuries from the indiscriminate use of a flash bang grenade that resulted from the Municipal Defendants' unconstitutional policies, custom or training. "It would be unreasonable to expect [Plaintiff] to provide more detail than [she] has without the benefit of discovery." *Id.* But the gravamen of Plaintiff's allegations which the Court assumes to be true are enough to state a claim. Whether she can prove it is another question not before the Court, and that will be borne out in discovery and at trial if the case survives summary judgment.

## Conclusion

For the reasons discussed, the Court **RECOMMENDS** that District Court Judge Cristal C. Brisco **GRANT IN PART** Defendant's Motion to Dismiss [DE 8] and **GRANT IN PART** Plaintiff's Motion to Amend [DE 14.]

All of Plaintiff R.G.'s claims against unknown individual law enforcement defendants should be dismissed without prejudice and without weighing in on whether if Plaintiff later learns the identity of the individual officers, adding them to the lawsuit will relate back or if those claims are barred by the statute of limitations.

Plaintiff Cole's proposed claims should be dismissed as untimely and barred by the statute of limitations because they were filed more than two-years after the alleged incident occurred.

Plaintiff R.G. should be allowed to file an amended complaint which states Section 1983 excessive force and state law battery claims against the City of Warsaw and Kosciusko County Sheriff.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. Failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. 28 U.S.C. § 636(b)(1); *Est. of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 516 (7th Cir. 2007); *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994).

So ORDERED this 13th day of January 2026.

*/s/ Abizer Zanzi*
MAGISTRATE JUDGE ABIZER ZANZI
UNITED STATES DISTRICT COURT
